**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL DAVID BEAR, | ) | CASE NO. 4:21-cv-2256 |
| Petitioner, | ) ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) ) | **REPORT AND RECOMMENDATION** |

**I.  INTRODUCTION**

Respondent, the United States of America ("Respondent"), has moved to dismiss or, in the alternative, for summary judgment (ECF No. 8) on Michael David Bear's ("Bear") 28 U.S.C. § 2241 Petition Writ of Habeas Corpus (ECF No. 1). This matter is before me pursuant to U.S. District Court Judge Solomon Oliver, Jr.'s order of referral for a preparation of a Report and Recommendation on the pending motion. (*See* ECF non-document order dated 09/02/2022).

Bear – challenging the BOP's computation of his federal sentence – claims in his Petition that he is entitled to 678 days of prior custody credit (plus any related good time credit) toward his federal sentence for time he previously served toward his state sentence. Respondent, through extra pleading evidence, argues in its motion that Bear's Petition should be dismissed pursuant to Rule 12(b)(6) because Bear did not exhaust all administrative remedies before filing suit. Alternatively, Respondent asks the Court to grant summary judgment in favor of Respondent because the sentencing court recommended against retroactive designation, and the BOP properly calculated Bear's jail-time credit.

For the reasons set forth below, I RECOMMEND that: (1) Respondent's motion be treated

as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; (2) Respondent's motion for summary judgment be granted because Bear failed to exhaust administrative remedies, and Bear's Petition be denied without prejudice so that he can exhaust administrative remedies; or (3) in the alternative, if the Court were to proceed directly to the merits of Bear's Petition, the Court grant summary judgment in Respondent's favor because the BOP correctly calculated Bear's jail-time credit. Finally, I RECOMMEND that F. Garza, the Warden of the Federal Correctional Institution ("FCI") in Elkton, Ohio – where Petitioner is currently housed – should be substituted for the United States of America as the Respondent in this case.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

#### 1. Bear's 2241 Petition

Bear is currently an inmate at the Federal Correctional Institution in Elkton, Ohio ("FCI Elkton"), where he is serving time for multiple federal offenses. Bear filed a Petition on November 29, 2021, claiming that he is entitled to a writ of habeas corpus "in order to correct the failure of the Federal Bureau of Prisons to grant the jail credit due to him from the time of August 12, 2005 to June 19, 2007." (Petition, ECF Doc. No. 1, at PageID # 1.) Bear states that this period of time amounts "to approximately 678 days in addition to any good time for that period." (*Id.*) Bear further asserts that "the grant of 678 days is not a reduction in sentence, but rather corrects his jailer's failure to grant said days and any related good time credit." (*Id.* at PageID #1-2.) Bear maintains that "the court in the state of Tennessee had directed that the Tennessee time be run concurrent with Bear's federal sentence," and that "at this point, the full term of Defendant's Tennessee [time] has been served." Bear asserts that he has "exhausted his administrative remedies within the system," (*id.* at PageID #2), though he attaches no documentation to substantiate this claim. Finally, he states his belief that "the sentencing court did not intend to give him a life sentence." (*Id.*)

### 2. *Respondent's Motion to Dismiss or for Summary Judgment*

On March 22, 2022, Respondent moved to dismiss Bear's § 2241 Petition under Rule 12(b)(6) because Bear did not exhaust all administrative remedies before filing suit. (Respondent's Mot., ECF No. 8-1, at 1.) In the alternative, Respondent asks the Court to grant summary judgment in favor of Respondent because the sentencing court recommended against retroactive designation, and Bear's release date was properly calculated. (*Id.*)

In support of these arguments, Respondent attaches the following materials to its motion: (1) the sworn declaration of Veronica Hodge ("Hodge Decl."), a Management Analyst at the Designation and Sentence Computation Center for the BOP (ECF No. 8-1, Exhibit 1, Hodge Decl., at ¶1); and (2) the sworn declaration of Christina Clark ("Clark Decl."), a Senior Consolidated Legal Center Attorney employed by the U.S. Department of Justice, Federal Bureau of Prisons ("BOP"), Northeast Regional Office. (Clark Decl., ECF No. 8-3, Exhibit 2, Clark Decl. at ¶1). Hodge's declaration outlines Bear's extensive criminal history relevant to the Petition and explains the process used by the BOP to calculate Bear's federal sentence. Clark's declaration outlines the BOP remedy procedure, maintains that Bear failed to exhaust his administrative remedies, and attaches documentation in support of this conclusion. The relevant information and supporting documentation from both declarations are set forth below.

### a. Hodge Declaration

Bear was arrested for possession of a controlled substance and possession of a firearm while in possession of drugs in Lee County, Virginia, on Case Numbers C04-5079 and 5080 on October 28, 2004. (*See* ECF Doc. No. 8-2, Hodge Decl. at ¶2, Attachment A, BOP Designation and Sentence Computation Center Sheet, PageID#43.) He was released on bond on December 6, 2004, and the disposition of this charge was Nolle Prossed. (*Id.*)

On August 12, 2005, Petitioner was arrested for the sale of marijuana in excess of one-half an ounce in Hancock County, Tennessee, on Case No. 32970. (*Id.* at ¶3, Attachment A, BOP Designation

and Sentence Computation Center Sheet, PageID#43.) On August 12, 2005 – while in state custody – Bear was temporary transferred into federal custody pursuant to a Federal Writ of Habeas Corpus Ad Prosequendum from the United States District Court for the Western District of Virginia. (*Id. at* ¶4, Exhibit B, PageID #45-46.) According to the Presentence Investigation Report ("PSR"), Bear's state charges for possession of a controlled substance, and possession of a firearm while in possession of drugs, in Lee County, Jonesville, Virginia, on Case Number C04-5079 and 80, was Nolle Prossed on September 21, 2005. (*Id.* at ¶5.)

On April 19, 2007, Bear was sentenced in the United States District Court, Western District of Virginia (Case Number 05-CR-0000029) for: (1) Possession of Firearm during a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Count One); (2) Possession of Firearm by Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and (3) Conspiracy to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. 846 and 841(b)(1)(B) (Count Three). (*Id.* at ¶6, Attachment C, Judgment in a Criminal Case, Case No. 05-CR-000029, PageID # 49.) The judgment ordered a 120-month sentence for Counts 2 and 3 to be served concurrent to Case No. 1:06-CR-0018, and a 60-month sentence on Count 1 to be served consecutive to Case No. 1:06-CR-00018. (*Id.*) The judgment was silent regarding its relationship to any state sentence. (*See id.*)

On the same date, Bear was also sentenced in the United States District Court, Western District of Virginia (Case No. 06-CR-00018) to a term of 240 months imprisonment for Use of Interstate Facilities to Commit Murder for Hire, in violation of 18 U.S.C. § 1958. (*Id.* at ¶7, Exhibit D, Judgment in a Criminal Case, PageID # 53.) The judgment was silent regarding its relationship to any other sentence. (*See id.*)

Bear returned to state custody after his federal sentencing. (*Id.* at ¶8, Attachment E, USMS Prisoner Tracking System, PageID # 57-58.) Upon his return to state custody, Bear received additional sentences for several other state offenses:

(1) On August 6, 2007, Bear was sentenced in state court (Case Number 07-CR-2713) to a one-year term of imprisonment for Delivery Schedule VI Controlled Substance, to run concurrently with his other state sentences, and with credit from August 12, 2005, through May 10, 2007 (637 days). (*Id.* at ¶9, Attachment F, Corrected Hancock County Judgment Entry, Case No. 07-CR-2713, PageID#61.)

(2) Bear was also sentenced in Case No. 07-CR-2714 to an eight-year term of imprisonment for Delivery Schedule II Cocaine, and again received credit from August 12, 2005, through May 10, 2007 (637 days). (*Id.* at ¶10, Attachment G, Corrected Hancock County Judgment Entry, Case No. 07-CR-2714, PageID #64)

(3) Finally, Bear was further sentenced in Case No. 07-CR-2717 to: (a) a 15-year term of imprisonment for Possession Schedule II, Cocaine (Count 1), with credit from August 12, 2005-May 10, 2007 (637 days); (b) a one-year term of imprisonment for Possession of Marijuana (Count 2), with credit from August 12, 2005-May 10, 2007 (637 days); and (3) a two-year term of imprisonment for Possession Schedule VI with Intent to Deliver (Count 3), with credit from May 11, 2007-August 6, 2007 (637 days). (*Id.* at ¶11, Attachment H, Corrected Hancock County Judgment Entry, Case No. 07-CR-2714, PageID #64).

On August 6, 2009, Bear paroled from his state sentence and was turned over to exclusive federal custody. (*Id.* at ¶12, Attachment I, Arrival/Departure Detail.)

The BOP prepared a sentence computation for Bear based on a 300-month total term of imprisonment, commencing on August 6, 2009 – the date he paroled form the state sentences. (*Id.* at ¶13, Attachment J, Sentence Computation Data, PageID #76-81.) The BOP applied prior custody credit to his sentence from October 28, 2004 through December 6, 2004 (the time he was detained in Virginia for Case Numbers C04-5079 and 5080) because this credit had not been applied to his Tennessee sentence. (*Id.*) Bear has a projected release date of October 15, 2030, via Good Conduct Time. (*Id.*)

On June 25, 2012, the BOP began a *nunc pro tunc* review of Bear's sentence under 18 U.S.C. § 3261(b). (*Id.* at ¶14.) As part of the review, the BOP sent a letter to the sentencing court in the U.S. District Court for the Western District of Virginia requesting the Court's position on a retroactive designation. (*Id.*, Attachment K, Letter to Sentencing Court, PageID#83-84). In a written response from the judge assigned to the case, the Court wrote that "it appears to me from the record that the seriousness of [Bear's] offenses should preclude a retroactive designation." (*Id.*, Attachment L, Response from Sentencing Court, PageID# 86). The Assistant United States Attorney assigned to the case agreed, submitting a written response that stated in relevant part:

> The United States respectfully requests the Court recommend to the Bureau of Prisons that it **_not_** designate the state institution for service of Bear's federal sentence. Mr. Bear was convicted of very serious offenses, including murder for hire. The public will benefit from Mr. Bear being incarcerated for as long as possible.

(*Id.*, Attachment M, Response from Assistant United States Attorney, PageID#88). Therefore, the BOP denied the *nunc pro tunc* designation, and Bear's sentence computation remained the same. (*Id.*, Attachment N, Factors Under 18 U.S.C. § 3261(b) dated August 7, 2012, PageID#90).

### b. Clark Declaration

Bear filed a request for prior custody credit to the Warden of FCI Springfield on August 14, 2018. (Clark Decl. at ¶5, Attachment C, PageID #104.) The Warden denied this request on August 27, 2018, advising Bear that he could appeal the Warden's response to the Regional Director, providing Bear with the address, and instructing Bear that the appeal must be received within 20 calendar days. (*Id.* at PageID #105.) Bear subsequently appealed the decision to the Regional Director on or about September 13, 2018. (*Id.* at PageID #106.) On September 26, 2022, the Acting Regional Director denied Bear's appeal. (*Id.*) Bear, however, never appealed his claim to the BOP Office of General Counsel, the final step in the process. (*Id.*)

### III.     LAW AND ANALYSIS

On March 22, 2022, Respondent moved to dismiss Bear's § 2241 Petition under Rule 12(b)(6) because Bear did not exhaust all administrative remedies before filing suit. In the alternative, Respondent asks the Court to grant summary judgment in favor of Respondent because the sentencing court recommended against retroactive designation, and Bear's release date was properly calculated.

### A. Legal Standards

A defendant may seek dismissal of claims against him under Rule 12(b)(6) of the Federal Rules of Evidence for failure to state a claim upon which relief can be granted. The Prison Litigation Reform Act "likewise requires dismissal of a prisoner's civil action if it is frivolous or fails to state a claim for relief." *Moglia v. Williams,* No. 4:20 CV 1359, 2021 WL 3566584, at *4 (N.D. Ohio June 21, 2021) (citing 28 U.S.C. § 1915(e)(2)(B)(i)-(ii)). However, if the moving parties relies on matters outside the pleadings, the motion must be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

Before converting a motion to dismiss into a motion for summary judgment, the court ordinarily must give the non-moving party reasonable notice of the conversion and a reasonable opportunity to respond with evidentiary material. *Moglia,* 2021 WL 36566584, at *4 (citing Fed. R. Civ. P. 12(d); *Northern Ky. Right to Life Comm. v. Kentucky. Registry of Election Fin.*, 134 F.3d 371 (Table), 1998 WL 13405 at *7, 1998 U.S. App. LEXIS 495 at *20 (6th Cir. Jan. 7, 1998) (unpublished). "Whether notice of conversion is required or not depends on the facts and circumstances of each case." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 393 (6th Cir. 1975). The relevant question is whether the parties likely would be surprised by the conversion. *Id.*

### B. Application of Legal Standard to the Instant Motion

Although Respondent's motion moves both under Rule 12(b)(6) and Rule 56 in the alternative, the motion relies on matters outside the pleadings to support arguments for dismissal and summary

7

judgment. (*See generally* Hodge Decl.; Clark Decl.) Because the motion relies on matters outside the pleadings, I recommend that the Court treat Respondent's motion as a motion for summary judgment under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d); *see also Moglia,* 2021 WL 36566584, at *4 (treating exhaustion argument as brought under Rule 56 because the moving party relied on matters outside the pleadings and petitioner had an opportunity to respond and would not be surprised by the conversion); *Moglia v. Williams,* No. 4:20 CV 1359, 2021 WL 2841581, at *2 (N.D. Ohio July 8, 2021) (Oliver, J.) (adopting in part the Report and Recommendation of Magistrate Judge Parker by construing the motion for failure to exhaust as a motion for summary judgment, and granting the motion for summary judgment for failure to exhaust administrative remedies).

Moreover, neither party would be prejudiced by converting Respondent's motion to a motion for summary judgment, and no additional notice before ruling on the motion is required. *Moglia,* 2021 WL 3566584, at *4 (citing *Dayco Corp. v. Goodyear Tire &Rubber Co.,* 523 F.2d 389, 393 (6th Cir. 1975). That is because: (1) Respondent expressly moved for summary judgment as an alternative form of relief; (2) Bear was served with copies of Respondent' motion seeking summary judgment as an alternative basis for relief; (3) the Court's docket reminded Bear of Respondent's pending motion; and (4) Bear has had over eight months since being served with Respondent's motion seeking summary judgment in the alternative, but he has taken no action to reply to it. *See Moglia,* 2021 WL 3566584, at *4. Like the court in *Moglia,* I conclude that "both parties are on notice of the potential for conversion and have received a reasonable opportunity to present evidence, making additional notice of conversion unnecessary at this juncture." *Id.; see also Dayco Corp.*, 523 F.2d at 393.

### C. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The moving party must demonstrate "the basis for

8

its motion, and identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986) (quotation marks omitted). The non-moving party may not simply rely on his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted); *see also Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996) ("The court does not have the responsibility to search the record sua sponte for genuine issues of fact").

In evaluating the evidence presented on a summary judgment motion, courts must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. Nevertheless, a court need not accept unsupported or conclusory statements as true. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

**D. Failure to Exhaust Administrative Remedies**

A habeas corpus action under 28 U.S.C. § 2241 challenges the execution or manner in which the Bureau of Prisons carries out an inmate's sentence. *Capaldi v. Pontesso,* 135 F.3d 1122, 1123 (6th Cir. 1998) (citing *United States v. Jalili,* 924 F.2d 889, 893 (6th Cir. 1991)).  Challenges to sentence credit calculations fall under 28 U.S.C. § 2241. *Woody v. Marberry,* No. 05-1403, 2006 WL 1083941, at *3 (6th Cir. April 25, 2006) ("Under 2241 … a court can grant relief when sentencing credits are miscalculated.")

The Sixth Circuit has long recognized that, prior to filing a habeas petition under 2241, a federal inmate must exhaust a specific administrative procedure. *Fazzini v. Northeast Ohio Corr. Ctr.,* 473 F.3d 229, 231 (6th Cir. 2006). And as the court in *Moglia* recognized:

> Because a failure to exhaust administrative remedies is non-jurisdictional, it can be excused upon a show of cause and prejudice, *Engle v. United States*, 26 F. App'x 394, 396 (6th Cir.

9

> 2001), or when the prisoner can show that pursuing administrative remedies would be futile. *Fazzini*, 473 F.3d at 236. A court may also proceed directly to the merits in the interest of judicial economy. *Rizo*, No. 4:12cv1798, 2013 WL 774558, at *3, 2013 U.S. Dist. LEXIS 25997, at *8; *Callier v. Shartle*, No. 1:10 CV 524, 2010 WL 3604112, at *2, 2010 U.S. Dist. LEXIS 94590, at *5 (N.D. Ohio Sept. 10, 2010).

*Moglia,* 2021 WL 3566584, at *5.

The four-step administrative remedies provided by the BOP are set forth in 28 C.F.R. § 542.10 *et seq*. A prisoner must first present his issue of concern informally to staff through the informal resolution process established by the warden. 28 C.F.R. § 542.13(a). After 20 days, if the issue is not resolved through informal resolution, the prisoner must submit a BP-9 form Administrative Remedy Request. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the warden's response to his BP-9 request, the inmate may file a BP-10 Appeal form with the regional director within 20 days after receiving the warden's response. 28 C.F.R. § 542.15(a). The inmate may further appeal the regional director's response through a BP-11 Appeal form to the Office of the General Counsel within 30 days of the regional director's response. *Id.* "The administrative remedy process is not considered 'exhausted' until an inmate's final appeal is denied by the [BOP] General Counsel." *Blumling v. United States*, No. 4:19cv2587, 2020 WL 4333006, at *8 (N.D. Ohio July 28, 2020).

The Supreme Court has "identified the benefits of exhaustion to include allowing a prion to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 88-91 (2006); *Porter v. Nussle,* 534 U.S. 516, 524-525 (2002). For these reasons, a petitioner is required to fully exhaust BOP's administrative remedies before petitioning for a writ of habeas corpus under 2241. *Little v. Hopkins,* 638 F.2d 953, 953-954 (6th Cir. 1981) (affirming district court's dismissal for failure to exhaust administrative remedies); *United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir. 1996) (dismissing petitioner's claim that the trial court did not give him sentencing

credit for the ten-month period he was released on a personal recognizance bond because it "is settled law that this issue is not ripe for review until the Bureau of Prisons has ruled on a defendant's request for credit" and collecting cases); *Sesi v. U.S. Bureau of Prisons,* 238 F.3d 423, 2000 WL 1827950, at *2 (6th Cir. Dec. 7, 2000) (holding the petition challenging the length of his confinement was properly construed as a 2241 habeas petition, and affirming dismissal of the petition for failure to exhaust administrative remedies). Exhaustion occurs when a petitioner complies with an agency's deadlines, critical procedural rules, and all steps of the available administrative process. *Woodford v. Ngo,* 548 U.S. 81, 90-92; *Jones v. Bock,* 549 U.S. 199, 218 (2007) (compliance with prison grievance procedures is required to properly exhaust).

Here, a review of the record makes clear that Bear failed to exhaust his administrative remedies regarding his challenge to the BOP's sentence computation because Bear never appealed his claim to the BOP General Counsel, the final step in the process. (Clark. Decl. ¶5; Attachment B and C, PageID#101-107). Nor has Bear "attempted to show, much less established, cause to excuse his failure to exhaust administrative remedies because he has not alleged that an external factor has prevent him from exhausting his claims." *Moglia,* 2021 WL 35666584, at *6; *see also Engle,* 26 F. App'x at 396. Finally, it does not appear that it would be futile for Bear to exhaust his administrative remedies would be futile. *Moglia,* 2021 WL 35666584, at *6; *Fazzini,* 473 F.3d at 236. As the court recognized in *Moglia*:

> The Attorney General – through the BOP – has the authority to determine what jail-time credit a federal prisoner is due. 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). And although any request for administrative relief would undoubtedly be denied as untimely, the BOP regulations provide inmates with a procedure by which they may resubmit their requests to cure "correctable" defects. 28 C.F.R. § 542.17(b). For example, inmates can demonstrate "valid reasons" for any delay in submitting their requests for administrative relief at the appeal stages. 28 C.F.R. § 542.15(a).

*Moglia,* 2021 3566584, at *6. As in *Moglia,* I find that Bear has failed to exhaust his administrative remedies, and it would not be futile to require him to do so now. Accordingly, I recommend that the

Court grant summary judgment in favor of Respondent and dismiss Bear's § 2241 petition without prejudice so that he may exhaust administrative remedies.

**E. Merits**

Even if the Court were to proceed to the merits of Bear's 2241 Petition, I would still recommend that the Court grant summary judgment in favor of Respondent and deny Bear's Petition because the BOP properly calculated his sentence.

Bear claims that he is entitled to 678 days of prior custody credit toward his federal sentence for time that he served toward his state sentence. Yet, 18 U.S.C. § 3585(a) provides that a federal sentence "commences on the date the defendant is received in custody awaiting transportation to … the official detention facility at which the sentence is to be served." Stated differently, "a federal sentence cannot commence … before the date on which it is imposed." *Johnson v. Shartle,* No. 4:12 CV2164, 2013 WL 2387765, at *2 (N.D. Ohio May 30, 2013) (citing *Columa v. Holder,* 445 F.3d 1282, 1283-84 (11th Cir. 2006) (per curiam)); *Moglia,* 2021 WL 3566584, at *6 (same). The evidence establishes that Bear was in primary state custody at the time of his federal sentencing. (*See* Hodge Decl., at Attachment A, DSCC Computation Sheet); *Johnson,* 2013 WL 2387765, at *2 ("It is well-settled that primary custodial jurisdiction remains vested in the sovereign that first arrests the defendant until that sovereign relinquishes its priority over the defendant.") At that time, he was taken into federal custody pursuant to a writ of habeas corpus *ad prosequendum.* (*Id.* at Attachment B, Writ of Habeas Corpus Ad Prosequendum.) Bear was released from his state sentence on August 6, 2009, the date he paroled from the state sentence. Thus, his federal sentence commenced on August 6, 2009. (*Id.* at Attachment I, Arrival/Departure Detail.)

18 U.S.C. § 3585(b) controls the award of prior custody credit, and it provides that credit may not be given toward a federal sentence for time that was previously credited toward any other sentence. *See also United States v. Wilson,* 503 U.S. 329, 337 (1992) ("Congress made clear [through 18 U.S.C. § 3585(b)] that a defendant could not receive a double credit for his detention time.") Here, Bear was

awarded prior custody credit from October 28, 2004, to December 6, 2004 – the dates of his detention in the state of Virginia. (*See* Exhibit 1, Hodge Decl., at Attachment A, Designation and Computation Center sheet, PageID# 43.) The State of Tennessee also awarded Bear 637 days of prior custody credit toward his Tennessee sentence from August 12, 2005 (the date of his arrest in Tennessee) through May 10, 2007. (*See id.* at Attachment F, PageID #61.) The State of Tennessee also awarded Bear credit from May 11, 2007 to August 6, 2007. (*See id.* at PageID #69.) Bear was also serving a sentence in state court from August 6, 2007 until he paroled on August 6, 2009. (*See id.* at Attachment I, PageID #73.). Moreover, the sentencing court recommended against retroactive designation. (*See id. at* Attachment L, Attachment M); *see also Wallace v. Stine,* No. 08–287–GFVT, 2009 WL 2026385, at *6 (E.D. Ky. July 9, 2009) (finding that the sentencing court declined to modify its judgment by stating that the federal sentence was to run concurrent with the state court). Accordingly, the record establishes that BOP correctly awarded Bear all proper credit under § 3585(b), and he is not eligible for application of these 678 days of credit (August 12, 2005 – June 19, 2017) that he requests toward his federal sentence.

## IV. RECOMMENDATION

Based on the foregoing, I RECOMMEND that: (1) Respondent's motion be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; (2) Respondent's motion for summary judgment be granted for Bear's failure to exhaust his administrative remedies, and his Petition be denied without prejudice so that he can exhaust administrative remedies; or (3) in the alternative, if the Court were to proceed directly to the merits of Bear's Petition, the Court grant summary judgment in Respondent's favor because the BOP correctly calculated Bear's jail-time credit. Finally, I RECOMMEND that F. Garza, the Warden of the Federal Correctional Institution ("FCI") in Elkton, Ohio – where Petitioner is currently housed – should be substituted for the United States of America as the Respondent in this case.

Dated: December 5, 2022                        *s/Jennifer Dowdell Armstrong*
                                                                   Jennifer Dowdell Armstrong
                                                                   U.S. Magistrate Judge

### V.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).